IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DARRELL NICKERSON, o/b/o §
Karolyn Nickerson, Deceased §
§
Plaintiff, §
§
VS. § NO. 3-07-CV-0921-BD
§
MICHAEL J. ASTRUE, §
Commissioner of Social Security §
§
Defendant. §

## MEMORANDUM OPINION AND ORDER

Plaintiff Darrell Nickerson, the surviving spouse of Karolyn Nickerson, seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is affirmed.

I.

On November 21, 2003, Karolyn Nickerson applied for disability insurance and supplemental security income ("SSI") benefits under Titles II and XVI of the Security Act, 42 U.S.C. § 401, *et seq.* After her applications were denied initially and on reconsideration, Karolyn requested a hearing before an administrative law judge. However, Karolyn died before this hearing was held. At the time of her death, Karolyn was 40 years old. She had a high school equivalency diploma with two years of college credit and past work experience as a certified medical assistant and a fast food employee. Karolyn had not engaged in substantial gainful activity since November 1, 1999.

Following the death of his wife, plaintiff filed a notice of substitution of parties and requested another administrative hearing. That hearing was held on December 20, 2005. At the conclusion of the hearing, the ALJ found that Karolyn was not disabled prior to her death and therefore not

entitled to disability or SSI benefits. Although the medical evidence established that Karolyn suffered from disorders of the spine with chronic pain and depression, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that, prior to her death, Karolyn had the residual functional capacity to perform a limited range of light work, but could not return to her past relevant employment. Relying on the testimony of a vocational expert, the judge found that Karolyn was capable of working as a housekeeping employee, a janitor, a general office clerk, an assembler, a sorter, and a hand packer-- jobs that existed in significant numbers in the national economy. Plaintiff appealed the hearing decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

II.

In two grounds for relief, plaintiff contends that: (1) the ALJ improperly evaluated Karolyn's mental impairments and her subjective complaints of pain; and (2) substantial evidence does not support the finding that Karolyn could perform other work in the national economy.

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must scrutinize the entire

record to ascertain whether substantial evidence supports the hearing decision. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

> 1. The hearing officer must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The hearing officer must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.
>
> 3. The hearing officer must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.
>
> 4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct.

2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant shows that his substantive rights were prejudiced. *Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

Plaintiff challenges the finding that his wife suffered from depression rather than a bipolar or borderline personality disorder. Had the ALJ properly characterized Karolyn's mental impairment, plaintiff believes the judge would have given more weight to her subjective complaints of pain and found that she lacked the residual functional capacity to perform any gainful and substantial work. Plaintiff further argues that the ALJ should have given controlling weight to the opinions of MHMR counselors, whose testing revealed that Karolyn's mental impairment was severe enough to prevent her from working.

1.

The medical evidence establishes that, prior to her death, Karolyn Nickerson suffered from an affective disorder alternately diagnosed as bipolar disorder and borderline personality disorder. (*Compare* Tr. at 243, 280, 282, 286, 297, 300, 304, 359, & 365 *with id.* at 283, 291, 294, 314, 317, 351, 359, 365, & 367). Although the ALJ found that Karolyn suffered from severe "chronic pain and depression," the judge determined that Karolyn was capable of performing several light, unskilled jobs that did not require independent decision making or more than incidental interpersonal contact. (*See id.* at 38-39). The judge also found that Karolyn's subjective complaints of pain were credible only "to the extent that they are consistent with the findings of this decision." (*Id.* at 36). According to plaintiff, the ALJ would have given more weight to Karolyn's complaints of disabling pain had the judge recognized that depression was merely one symptom of his wife's bipolar or borderline personality disorder.

In a thorough and well-reasoned decision, the ALJ explained why she believed that Karolyn had the residual functional capacity to perform a limited range of light work:

> At the hearing, medical expert testimony was provided by psychiatrist Hellmut Tauber, MD. Dr. Tauber reviewed the medical evidence of record, and testified that claimant had failed back syndrome associated with a prior injury to the lumbar spine occurring in 1996 and subsequent surgical repair in 1997. Dr. Tauber went on to say that claimant suffered from long-standing chronic pain syndrome in addition to an affective disorder alternately diagnosed as major depression, bipolar disorder, and even borderline personality disorder. Dr. Tauber indicated that the record did not reveal any evidence of psychosis, however. Dr. Tauber's testimony is supported by consultative examination findings from July of 2004. At that time, claimant reported a substantial improvement in her mood with use of psychotropic medications. Also, no sleep or appetite disturbance was noted although claimant recounted intermittent crying spells and low energy. It was additionally reported that claimant had no history of suicide attempt or psychiatric hospitalization. On mental status examination, claimant was somewhat lethargic but appeared in no

obvious distress while sitting for a prolonged period despite her complaints of chronic pain. Claimant's mood was depressed and her affect restricted; otherwise, memory and concentration were within normal limits. Bipolar disorder, not otherwise specified, in partial remission was diagnosed and a global assessment of functioning (GAF) score of 60 was assigned. In accordance with the Diagnostic and Statistical Manual of Mental Disorders, a GAF score of 60 denotes only moderate symptomology and not a psychiatric impairment of disabling severity.

On cross-examination, counsel questioned Dr. Tauber regarding the longitudinal nature of claimant's pain. Dr. Tauber, however, responded that there were no objective findings in the record to support claimant's degree of pain and that her symptoms decreased after epidural steroid injections. Moreover, Dr. Tauber suggested the possibility of narcotic pain medication dependence. Counsel also questioned Dr. Tauber regarding claimant's longstanding mental illness and its relation to her chronic pain. He responded that features of borderline personality disorder were often manifested in physical illness and claimant's mental impairment was simply not of disabling severity.

Based on his review of claimant's medical records, Dr. Tauber opined that claimant could have sustained the demands of light work (unskilled in nature) with occasional postural limitations and limited interpersonal contact and the undersigned accords considerable weight to this testimony as it is consistent with the objective evidence as a whole. Pursuant to Social Security Ruling 96-6p, the undersigned has additionally considered the assessment of the state agency medical consultants [ ]. The state agency physicians similarly limited claimant to the exertional demands of light work with occasional postural manuevers [sic] and some degree of mental restrictions. The undersigned adopts the state agency conclusion as it is consistent with other significant evidence (including the opinion of Dr. Tauber) and it is well supported by the other objective medical findings.

The undersigned has also considered the claimant's subjective allegations in accordance with the provisions of Social Security Ruling 96-7 and finds them credible to the extent that they are consistent with the findings of this decision.

(Tr. 35-36) (internal citations omitted).

The social security regulations establish a two-step process for evaluating subjective complaints of pain and other symptoms. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the pain or other symptoms alleged. *See* SSR 96-7p, 1996 WL 374186 at *2 (Jul. 2, 1996). Where such an impairment has been proved, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine whether they limit the ability to do basic work activities. *Id.*; *see also* 20 C.F.R. § 404.1529. In addition to objective medical evidence, the ALJ should consider the following factors in assessing the claimant's credibility:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186 at *3. Although the ALJ must give specific reasons for making a credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were

considered." *Prince v. Barnhart*, 418 F.Supp.2d 863, 871 (E.D. Tex. 2005), *citing Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001).

Here, the ALJ cited to the applicable regulations, summarized the evidence, and articulated legitimate reasons for finding that Karolyn's complaints of disabling pain were not credible to the extent alleged. It is clear from the context of the hearing decision that the ALJ gave adequate consideration to the regulatory factors. *See, e.g. Salgado v. Astrue*, 271 Fed.Appx. 456, 2008 WL 828945 at *6 (5th Cir. Mar. 28, 2008) (upholding credibility determination made by ALJ notwithstanding failure to address each regulatory factor); *Undheim v. Barnhart*, 214 Fed.Appx. 448, 2007 WL 178062 at *2 (5th Cir. Jan. 19, 2007) (same); *Prince*, 418 F.Supp.2d at 871 (same). Nor does plaintiff point to any objective medical evidence that suggests his wife was precluded from all work activity. To the contrary, mental and physical residual functional capacity assessments performed by state agency physicians show that Karolyn could perform a limited range of light, unskilled work. (*See* Tr. at 184-87 & 189-96). Because the ALJ used the proper legal standards in evaluating Karolyn's subjective complaints of disabling pain, the hearing decision is supported by substantial evidence.

2.

Plaintiff further argues that the ALJ should have given controlling weight to the opinions of MHMR counselors, who repeatedly measured Karolyn's global assessment of functioning ("GAF") at no more than 45--a score that indicates a serious impairment in social, occupational, or school functioning, including the inability to keep a job.[1] (*See, e.g.* Tr. at 243, 283, 288, 300, 319).

---

[1] GAF is a standardized measure of psychological, social, and occupational functioning used in assessing a patient's mental health. *See Boyd v. Apfel*, 239 F.3d 698, 700 n.2 (5th Cir. 2001). The GAF scale ranges from 100, denoting superior functioning, to 1, indicating that the patient is in persistent danger of severely hurting herself or others, has a persistent inability to maintain minimal personal hygiene, or has engaged in a serious suicidal act with a clear expectation of death. *Brown v. Barnhart*, 285 F.Supp.2d 919, 924 n.7 (S.D. Tex. 2003), *citing* American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994).

The court initially observes that a low GAF score is not determinative of a disability. *See, e.g. Sambula v. Barnhart*, 285 F.Supp.2d 815, 825 (S.D. Tex. 2002); *Alvarez v. Barnhart*, No. SA-01-CA-0958-FBN, 2002 WL 31466411 at *8 (W.D. Tex. Oct. 2, 2002); *Glover v. Massanari*, No. 3-00-CV-2088-AH, 2001 WL 1112351 at *7 (N.D. Tex. Sept. 14, 2001). "While the GAF is a test used by mental health practitioners with respect to planning treatment and tracking the clinical progress of an individual in global terms, the ALJ is not bound to consider its results at the exclusion of other medically reliable evidence." *Alvarez*, 2002 WL 31466411 at *8. The hearing record includes an evaluation performed by J. Lawrence Muirhead, Ph.D., a clinical psychologist, who diagnosed Karolyn as having bipolar disorder, not otherwise specified, in partial remission. At the time of the evaluation, Dr. Muirhead observed that:

> [Karolyn] complained of lumbar ailment but was in no obvious distress while seated during the course of the evaluation. Her speech was monotonic and produced at a normal rate. Her attitude was plaintive and she struggled with a compromised frustration tolerance. Her mood was depressive and her affect was restricted in range. Her thought processes were relevant and goal directed with good conceptual development. On a test of immediate recall, she was able to repeat six digits forward and four digits backward. In a test of delayed recall, she was able to remember three of three presented items after a five-minute delay. There was no evidence of psychotic process or marked impairment of reality testing. Intellectually, she appeared to function in an average range. Her judgment appeared to be partially compromised by depressive affect. Her sensorium was clear. She was able to correctly specify both her date of birth and the date of evaluation. She understood the purpose of the evaluation. With respect to her working capacity, she made the statement, "I get upset easily."

(Tr. at 238). A GAF test administered by Dr. Muirhead resulted in a score of 60, indicating that Karolyn had only moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR (DSM IV-TR) at 34 (4th ed. 2000). Those findings were supported by

Dr. Hellmut Tauber, a psychiatrist, who testified at the administrative hearing that Karolyn's GAF score of 45 was "artificially low," and that she could be expected to sustain full-time employment notwithstanding her mental impairments. (*See* Tr. at 395-98). Dr. Tauber based on his opinion on the lack of objective medical evidence that Karolyn had any psychotic manifestations, hospitalizations, or episodes of decompensation. (*Id.*). In light of this evidence, the ALJ did not err in discrediting the results of the GAF test administered by MHMR counselors.

The court also notes that the MHMR counselors who evaluated Karolyn Nickerson are not "acceptable medical sources" whose opinions are entitled to controlling weight. *Zumwalt v. Astrue*, 220 Fed. Appx. 770, 2007 WL 853206 at *9 (10th Cir. Mar. 22, 2007); *see also Johnson v. Apfel*, No. 98-0674-AH-G, 2000 WL 208741 at *2 (S.D. Ala. Feb. 17, 2000) (licensed professional counselor is not an "acceptable medical source"). Only licensed physicians or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are considered "acceptable medical sources" who can provide evidence that a claimant suffers from a medically determinable impairment. *See* 20 C.F.R. §§ 404.1513(a) & 416.913(a). Without contrary evidence from an "acceptable medical source," the ALJ was entitled to rely on the opinions of Dr. Muirhead, a licensed psychologist, and Dr. Tauber, a licensed physician, both of whom concluded that Karolyn did not have a disabling mental impairment.[2]

C.

In his second ground for relief, plaintiff contends that the ALJ posed an improper hypothetical question to Molly Meloy, a vocational expert, that failed to include all the limitations associated with Karolyn's mental impairments. At the hearing, the judged asked Meloy:

---

[2] Plaintiff also criticizes the ALJ for failing to reference certain MHMR records in the hearing decision. (*See* Plf. MSJ Br. at 11). However, the ALJ is not required to mention or discuss the contents of every medical report and assessment contained in the administrative record. *See Okolie v. Astrue*, No. 4-07-CV-0485-Y, 2008 WL 1947103 at *6 (N.D. Tex. May 2, 2008).

> Could the hypothetical [person] with the claimant's education and work experience . . . are there jobs available, let's see, *light work, uncomplicated simple. Occasional postural and incidental contact with the public and supervisors.* Are there such jobs?

(Tr. at 400) (emphasis added). Meloy responded that such a person could work as a housekeeping employee, a janitor, and a general office clerk. (*Id.* at 400-01). Plaintiff now argues that the phrases "uncomplicated simple" and "incidental contact with the public and supervisors" are vague, confusing, and fail to take into account Karolyn's inability to follow more than "routine step instructions" and inability to perform work requiring "independent decision making" or "more than incidental interpersonal contact." (Plf. MSJ Br. at 12-13).

A hypothetical question to a vocational expert cannot provide substantial evidence supporting the denial of benefits unless: (1) the hypothetical reasonably incorporates all the disabilities of the claimant recognized by the ALJ; and (2) the claimant or her representative is afforded the opportunity to correct deficiencies in the question. *See Boyd v. Apfel*, 239 F.3d 698, 706-07 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). There is no requirement that, in posing a hypothetical, the ALJ use specific diagnostic or symptomatic terms where other descriptive words or phrases can adequately define the claimant's impairments. *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001). In this case, the hypothetical posed to the vocational expert incorporated all the mental limitations recognized by the ALJ and credibly established by the record. Plaintiff, who was represented by counsel at the administrative hearing, was given a full and fair opportunity to cross-examine the vocational expert. (*See* Tr. at 402-03). By describing Karolyn as being capable of doing "uncomplicated, simple" work, the ALJ adequately accounted for her limited ability to handle complex intellectual tasks or to exercise independent judgment. *Howard*, 255 F.3d at 582 (hypothetical describing claimant as capable of doing simple, routine, repetitive tasks adequately

accounted for finding of borderline intellectual functioning and deficiencies in concentration, persistence, or pace). Similarly, use of the phrase "incidental contact with the public and supervisors" reasonably incorporated the limitation that the job require no more than "incidental interpersonal contact." Accordingly, there is substantial evidence to support the finding that Karolyn could perform other work in the national economy.

## **CONCLUSION**

The hearing decision is affirmed in all respects.

SO ORDERED.

DATED: February 6, 2009.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE